UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORAN PETERSON
(#318935),

          Plaintiff,

v.

BEYONCA HILLIGOSS,

          Defendant.

_____/

Case No. 2:23-cv-10091
District Judge Thomas L. Ludington
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO DENY DEFENDANT HILLIGOSS'S MOTION FOR SUMMARY JUDGMENT (ECF No. 26)

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Defendant Hilligoss's motion for

summary judgment (ECF No. 26).

**II.    REPORT**

    **A.     Introduction**

    Toran Peterson is currently incarcerated at the Michigan Department of

Corrections (MDOC) Gus Harrison Correctional Facility (ARF).  (*See*

www.michigan.gov/corrections, "Offender Search," last visited Aug. 13, 2024.)

He has filed a multitude of lawsuits in this district, including two filed on the same

day as the instant case.[1]  On January 12, 2023, while located at the MDOC's

Macomb Correctional Facility (MRF), Peterson filed the instant lawsuit *in pro per*

against MRF Corrections Officer Beyonca Hilligoss.  (ECF No. 1; *see also* ECF

No. 12.)

## B.   The Pleading

Plaintiff signed his pleading under penalty of perjury.  (ECF No. 1,

PageID.2.)  He describes his lawsuit as a "42 U.S.C. § 1983 claim for discarding of

legal mail . . . ."  (ECF No. 1, PageID.1.)  Factually, Plaintiff alleges:

- On the evening of July 8, 2022[,] [Defendant] Hilligoss brought legal mail down on the segregation wing (A-wing) in seven unit at [MRF] where I was being housed on temporary segregation with legal mail.

- Pursuant to Policy Directive 01.01.110 Admin Rules[,] all employees are required to "<u>KNOW</u>" all policies and what is required of them to prevent the MDOC from being liable for violating them/rights.

---

[1] *See*, *e.g.*:  (a) 2:07-cv-13524-AJT-DAS *Peterson v. Krajnik* (prisoner civil rights, closed 06/06/08); (b) 2:20-cv-13266-SJM-KGA *Peterson v. Polavarapu*, *et al*. (prisoner civil rights, closed 07/27/22); (c) 2:20-cv-12635-NGE-EAS *Peterson v. Pigg, et al*. (prisoner civil rights, closed 09/08/21); (d) 2:23-cv-10089-MAG-EAS *Peterson v. David, et al*. (prisoner civil rights, closed 07/25/24); (e) 2:23-cv-10090-MAG-EAS *Peterson v. Corby* (prisoner civil rights, pending motions); (f) 2:23-cv-11770-TBG-DRG *Peterson v. Washington*, *et al*. (prisoner civil rights, transferred to W.D. Mich.); (g) 2:23-cv-11493-JJCG-CI *Peterson v. Young, et al.* (prisoner civil rights, closed 08/10/23); (h) 5:23-cv-13007-JEL-KGA *Peterson v. Kiptin, et al*. (prisoner civil rights, closed 07/25/24); and, (i) 1:23-cv-11769-TLL-PTM *Peterson v. Hill, et al*. (prisoner civil rights, closed 8/15/23).

- Policy entails that prisoners on temp. seg. must be allowed legal work along with other personal items (not everything)[.] [L]egal mail is an allowed item.

- Def. Hilligoss came to the cell I was housed in and told me that she had legal mail for me, that she was going to open it but not give it to me.  I asked her not to open my legal mail if she wasn't going to give it to me[,] informing her that I could have it.  She "insisted' on opening my legal mail without giving it to me.  I explain[ed] the serious mature of legal mail and how it could lead to a civil action.  Def. Hilligoss walked away with my legal mail repeating "I don't give a f[expletive]" over an[d] over.

- I wrote the Warden, Deputy, an Inspector requesting that they review the video to see what was done with my legal mail which was inside of the smaller manilla envelope.  They did nothing within two days so I filed a grievance.  [*See* ECF No. 34, PageID.203-205 (MRF-22-07-1461-17A).]

- I never received my legal and ended up writing different places to find out whether they sent me anything such as Medill Justice in Chicago.  I received the mail back so quick saying they weren't operating that I believed that it wasn't mailed out until I had it looked into.[2]

- I never received that piece of legal mail.

(*Id*., ¶¶ 6-12.)  Plaintiff's causes of action are based on his First Amendment right

"to send and receive mail[,]" gross negligence under Mich. Comp. Laws §

691.1407(2), willful and wanton misconduct under Mich. Comp. Laws §

---

[2] It appears that Plaintiff's August 9, 2022 letter to the Medill Justice Project, which was post-marked the same day, was returned to sender.  (*See* ECF No. 34, PageID.206-207.)

600.6304(8), harassment, and hostile environment.  (ECF No. 1, ¶¶ 13, 14.)

Plaintiff seeks compensatory and punitive damages.  (*Id.*, PageID.2 ¶¶ A, B.)

### C.   Pending Motion

This case has been referred to me for pretrial matters.  (ECF No. 14.)

Currently before the Court is Defendant Hilligoss's February 9, 2024 motion for

summary judgment, in which she presents two arguments:

- Peterson has failed to establish a First Amendment interference with mail claim against Hilligoss.

- Defendant Hilligoss is entitled to qualified immunity as a rational trier of fact would not conclude that she committed a clearly established constitutional violation against the Plaintiff.

(ECF No. 26, PageID.144, 152-159.)

Plaintiff's response was originally due on or before March 8, 2024.  (ECF

No. 27.)  However, the copy of the Court's order requiring response, which had

been mailed to Plaintiff at ICF, was returned as undeliverable.  (ECF No. 29.)[3]

---

[3] Two other items have been returned to the Court as undeliverable.  (*See* ECF Nos. 23, 30, 28, 33.)  The reason for this seems to be that Plaintiff's address – which was MRF at the time he initiated this lawsuit (ECF Nos. 1, 2, 3), changed to ICF around May 2023 (*see* ECF No. 16), and then changed to ARF around August 2023 (*see* ECF Nos. 17, 20, 21, 24, 31) – *remains ICF on the docket*, perhaps because the docket does not include a separately filed notice of change of address/contact information.  Instead, the cover letter for his August 28, 2023 witness list states, "please find my witness list and take note of my change of address below."  (ECF No. 17, PageID.86.)  Plaintiff is hereby reminded of his responsibility to notify the Court of a change in address, ideally by a separately filed notice.  *See* ECF No. 8; E.D. Mich. LR 11.2 ("Failure to Provide Notification of Change of Address").

While incarcerated at ARF, Plaintiff submitted a motion for extension of time, dated February 28, 2024 and filed March 6, 2024.  (ECF No. 31.)  On March 6, 2024, the Court granted Plaintiff's motion via text-only order, extended the response deadline to April 12, 2024, and mailed a copy of the order to Plaintiff at ICF.  (*See* ECF No. 32.)

Plaintiff's April 11, 2022 response (ECF No. 34) is timely, as is Defendant's April 25, 2024 reply (ECF No. 35).  This motion is now ready for decision.

### D.    Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of

fact," then the court may "consider the fact undisputed for the purposes of the motion.").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . .  [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).  Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is

properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . .” *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, “liberal treatment of pro se pleadings does not require lenient treatment of substantive law.” *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, “[o]nce a case has progressed to the summary judgment stage, . . . ‘the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.’” *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party’s “status as a pro se litigant does not alter [this] duty on a summary judgment motion.” *Viergutz v. Lucent Techs., Inc.*, 375 F. App’x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App’x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he “failed to present any evidence to defeat the government’s motion”).

**E.     Discussion**

      **1.     Defendant is not entitled to summary judgment on Plaintiff's First Amendment right to receive mail claim.**

Plaintiff alleges that Defendant Hilligoss's action "in taking and throwing away [his incoming] legal mail ... constitutes an[d] is in violation of the First Am[endment] to the U.S. Constitution to send and receive mail." (ECF No. 1, ¶ 13.) Defendant argues that Plaintiff "has failed to establish a First Amendment interference with mail claim against Hilligoss." (ECF No. 26, PageID.152.)

"A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). "[P]rison officials may well conclude that certain proposed interactions, though seemingly innocuous to laymen, have potentially significant implications for the order and security of the prison." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). "In an attempt to accommodate both the prison's needs and the prisoner's rights, courts have approved prison policies that allow prison officials to open 'legal mail' and inspect it for contraband in the presence of the prisoner." *Sallier*, 343 F.3d at 874.

**a.     MDOC PD 05.03.118 ("Prisoner Mail")**

The MDOC Policy Directive addressing "prisoner mail" contains several paragraphs related to "mail requiring special handling," which includes "legal

mail."  MDOC PD 05.03.118 ¶¶ EE-HH (effective Mar. 1, 2018).  (ECF No. 26-4,

PageID.180-181.)  As for processing such mail, the PD provides, *inter alia*:

- Incoming mail receiving special handling shall be opened and inspected for money, controlled substances, and other physical contraband in the prisoner's presence.  The content of the mail shall not be read or skimmed.  All physical contraband shall be confiscated prior to delivery to the prisoner.  Mail opened in the prisoner's presence that clearly does not qualify for special handling or contains contraband shall be returned to the mailroom for processing in accordance with this policy.

- A log shall be maintained to document the delivery of mail receiving special handling.  The log shall include the date the mail was received in the mailroom, the sender's name, the prisoner's name and number, the date the mail was given to the prisoner, and the prisoner's signature acknowledging receipt of the mail.  If the prisoner chooses not to sign or accept the mail, that shall be documented and the mail delivered to the prisoner.

(*Id.*, ¶¶ JJ, KK.)  The MDOC PD on segregation standards provides for "[m]ail

privileges in accordance with PD 05.03.118 'Prisoner Mail,' including the receipt

of personal correspondence and photographs."  MDOC PD 04.05.120, effective

June 1, 2019, ¶ AA(12); *see also id.*, ¶ OO(5) (under certain circumstances,

permitting "[m]ail from an attorney or law firm, a legitimate legal service

organization, the Department of Attorney General, a prosecuting attorney's office,

a court, a clerk of the court, or a Friend of the Court office" for prisoners "on either

a paper or combustible restriction . . .").

Defending the legitimacy of this procedure, Hilligoss:  (i) declares that

"[i]ncoming mail presents a danger to the safety and security of the facility as

individuals frequently attempt to smuggle contraband including drugs and weapons into prison facilities through the mail[,]" (ECF No. 26-2, ¶ 11); and (ii) cites *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003) (There is a "legitimate goal of deterring the use of drugs and alcohol within the prisons.  Drug smuggling and drug use in prison are intractable problems.").  (ECF No. 26, PageID.154.)  (*See also* ECF No. 26-2, ¶¶ 12, 13.)  At this point, the Court notes its agreement with Defendant that Plaintiff "has not contested the constitutionality of the MDOC PD 05.03.118."  (ECF No. 26, PageID.158.)  Moreover, neither party seems to dispute that the mail in question was subject to MDOC PD 05.03.118's "special handling" provisions.  (*Id.*, ¶¶ EE-HH, II-KK.)  Instead, the disputes concern compliance with those provisions, in particular ¶¶ JJ, KK.

### b. Hilligoss contends Peterson refused to participate in the MDOC's legal mail procedure.

Defendant contends that "Peterson's right to send and receive mail was not violated," because "he refused to participate in the established procedure regarding legal mail."  (ECF No. 26, PageID.154; ECF No. 35, PageID.224.)

### i. Paragraph JJ (open and inspected in the prisoner's presence)

To the extent Defendant contends Plaintiff refused "to allow his mail to be opened and inspected . . . [,]" (*id.*, PageID.154-155; *see also id.*, PageID.147, 150), Defendant appears to invoke MDOC PD 05.03.118's ¶ JJ.  As for Paragraph JJ's

requirement that special handling mail is to be *opened and inspected* in the

prisoner's presence, Plaintiff's verified pleading alleges Hilligoss "'insisted' on

opening [his] legal mail without giving it to [him]."  (ECF No. 1, ¶ 9.)

Preliminarily, there is a question of fact as to whether the mail was opened,

and, if so, whether it was opened in Plaintiff's presence.  Sgt. Inger's July 2022

Step I grievance response states, in part:

> Officer Hilligoss stated that she talked to Sergeant Ford, Lieutenant
> Loxton and Inspector Dalton and that they all said prisoners in
> Housing Unit 7 Segregation don't receive their legal mail in their
> cells.  Officer Hilligoss stated that she told prisoner Peterson he could
> not have the mail in his cell *but she would open and inspect the mail
> in prisoner Peterson's presence* and then place it in his property.
> Officer Hilligoss stated that prisoner Peterson became irate and
> refused to partici[pa]te in the legal mail process so Officer Hilligoss
> returned the legal mail to Control Center.

(ECF No. 34, PageID.204 (emphasis added) [MRF-22-07-1461-17A].)[4]  Later, in

Defendant's October 9, 2023 sworn discovery response, she stated Peterson

"refused to sign the legal mail sheet after I had already began opening his mail . .

[,]" (ECF No. 34, PageID.212).  At Plaintiff's December 8, 2023 deposition,

Plaintiff agreed that he "told [Hilligoss] don't open it *if you're not going to give it

to me*[,]" (ECF No. 26-3, PageID.172 (emphasis added)).[5]  And, on February 8,

---

[4] In his response, Plaintiff seems to allege that neither Ford, nor Loxton, nor Dalton
were interviewed, and, although Plaintiff "requested the video footage, it wasn't
presented."  (ECF No. 34, PageID.200.)

[5] In her motion, Defendant relies upon certain portions of Plaintiff's deposition

2024, Hilligoss declared Peterson "refused to allow his mail to be opened and inspected . . . [,]" (ECF No. 26-2, PageID.165 ¶ 14).  This appears to be the basis for Plaintiff's response that Defendant "is currently saying that [Plaintiff] refused to allow her to open the mail to inspect it . . . ."  (ECF No. 34, PageID.200.)  On April 3, 2024, Plaintiff declared "Hilligoss opened [his] legal mail although [he] asked her numerous times not to if she wasn't going to give it to [him][,]" (ECF No. 34, PageID.201 ¶ 2).

### ii.   Paragraph KK (signature and acceptance)

To the extent Defendant contends Plaintiff refused "to sign for the mail[,]" (*id.*, PageID.150), Defendant appears to invoke MDOC PD 05.03.118's ¶ KK, which contains provisions about the prisoner signing for and accepting the mail.

### (a)   Alleged refusal to sign

In his motion response, Plaintiff suggests that Defendant has changed her story from what she allegedly told Sgt. Inger in July 2022, because Plaintiff claims Defendant "made a new statement that [Plaintiff] 'refused to sign for his legal mail'[,] so she returned it to the control center."  (ECF No. 34, PageID.199.)

---

testimony.  (*See* ECF No. 26, PageID.159, 150, 154.)  The portions upon which Defendant relies (*i.e.*, ECF No. 26, PageID.170 [Lines 8-10, 20-22], 171 [Lines 5-8], 172 [Lines 2-5]) are different than those whose accuracy Plaintiff challenges in his response (*see* ECF No. 34, PageID.201 ¶ 6; ECF No. 26-3, PageID.171 [Lines 16, 18], PageID.172 [Lines 24-25], PageID.173 [Line 1].)

On this point, Plaintiff appears to rely upon Defendant Hilligoss's following, sworn October 9, 2023 discovery response:

> I completed the legal mail[,] and Inmate Peterson *refused to sign* the legal mail sheet after I had already began opening his mail[.]  I wrote down on the legal mail log paper that he *refused to sign*[,] and I returned his legal mail and the piece of paper to our control center in the respected spot.

(ECF No. 34, PageID.212 (emphases added) [Rsp. No. 9].)  Plaintiff characterizes this answer as "solely saying I refused to sign."  (ECF No. 34, PageID.200.)  In any event, Sgt. Inger's aforementioned July 2022 Step I grievance response – which does not mention an alleged refusal to sign – does differ from Defendant's October 2023 sworn discovery response.  Indeed, on February 8, 2024, Defendant Hilligoss declared that Plaintiff "refused to either sign for his legal mail or allow it to be opened and inspected for contraband."  (ECF No. 26-2, PageID.165 ¶ 10.)

### (b)    Alleged refusal to accept

In January 2024, nearly three months after Defendant's sworn discovery responses – by which point Plaintiff claims Defendant had been "confronted with the fact that policy requires that staff give the prisoner their mail in the event in which they refuse to sign for it . . . [,]" – Plaintiff contends Defendant "changed her cause to [Plaintiff] refused to accept it . . . ."  (*Id*., PageID.199.)  Defendant's January 2, 2024 answers to Request for Admission Nos. 11 and 12 denied as untrue that "Peterson never refused to accept his mail[,]" and admitted that

"Peterson refused to sign for his legal mail." (ECF No. 34, PageID.200; *id*.,

PageID.216-217.)  Citing these answers, Plaintiff claims Defendant is "now

implying that [Plaintiff] refused to sign/accept his legal mail[.]" (*Id*., PageID.200.)

Hilligoss reinforces this position in her February 9, 2024 motion, contending

she "did not deny Peterson mail[;]" rather, "Peterson refused to participate in the

procedure *to receive* his mail in a way that was safe for him and the facility."

(ECF No. 26, PageID.155 (emphasis added).)  In a way, Hilligoss places the blame

squarely on Plaintiff, taking the position that, "to whatever extent [Plaintiff's]

access to the mail was curtailed, it was by his own doing and not the actions of

Hilligoss." (*Id*., PageID.159.)

### e.   Plaintiff contends he did not refuse to sign or accept his legal mail.

By comparison, in his April 3, 2024 declaration, Plaintiff declares he has

"'<u>NEVER</u>' refused to sign for [his] legal mail or accept it." (ECF No. 34,

PageID.201 ¶ 1.)  Perhaps with reference to MDOC PD 05.03.118 ¶ KK regarding

the special handling mail log, Plaintiff declares he "did not refuse to sign for [his]

legal mail nor did [he] refuse to accept [his] legal mail from Hilligoss." (ECF No.

34, PageID.201 ¶ 3.)

Plaintiff further declares Hilligoss "refused to give [him] [his] legal mail

an[d] arbitrarily confiscated it without any sort of hearing." (*Id*., ¶ 5.)  Plaintiff

also declares:  "At no time did I become irate[; [Defendant] Hilligoss became irate

as [he] . . . calmly explained things to her as she walked away repeating[,] '<u>I</u>

<u>DON'T GIVE a [expletive]</u>.'" (*Id*., ¶ 8 (emphasis in original).) (*See also* ECF No.

34, PageID.221 ¶¶ 3-5 [Declaration Zaine Teeple (#822308)].) For her part,

Defendant Hilligoss declares she was not belligerent and did not use foul language

as she walked away from his cell. (*See* ECF No. 26-2, PageID.166 ¶ 17.).[6] Either

way, Plaintiff's declaration creates a genuine dispute as to the material fact of

whether Plaintiff refused to participate in the MDOC's legal mail procedure.

> **f.    Defendant is not entitled to summary judgment on the basis that the alleged incident was "random and isolated."**

In her motion and her reply, Defendant Hilligoss describes "the single

incident alleged by Peterson" as "an isolated incident," that "may not rise to the

level of a constitutional violation under the First Amendment." (ECF No. 26,

PageID.155; ECF No. 35, PageID.224-225.) *See Colvin v. Caruso*, 605 F.3d 282,

293 (6th Cir. 2010) ("Because Colvin has asserted only isolated incidents of [the

food service director] and [the assistant food service director] serving him

nonkosher food, and because these incidents are not sufficient to sustain his claim,

---

[6] Plaintiff also declares that he "received mail a [couple of] days later[,] and the c/o refused to allow [him] to sign for it." (ECF No. 34, PageID.201 ¶ 9.) (*See also* ECF No. 34, PageID.221 ¶ 6 [Declaration Zaine Teeple (#822308)].) This report assumes Plaintiff's declaration is referring to a different piece of mail, because his complaint – which discusses the alleged events of July 8, 2022 – alleges he "never received that piece of legal mail." (ECF No. 1, ¶ 12.)

we find no error in the district court's ruling."); *Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519, *2 (6th Cir. Aug, 11, 2000) (Johnson "has, at most, set forth isolated instances of interference with prisoners' mail and only one instance that affected him.  This random and isolated interference with Johnson's mail did not violate his constitutional rights.").  *See also Pleasant-Bey v. Tennessee Dep't of Correction*, No. 18-5424, 2019 WL 11880267, at *4 (6th Cir. Apr. 4, 2019) ("the undisputed evidence showed that the burden on [Plaintiff's] religious exercise was not a substantial one.") (referencing *Colvin*, 605 F.3d at 293).  However, in *Colvin*, the Sixth Circuit noted "there [was no] evidence that the isolated mistakes were willful[,]" *Colvin*, 605 F.3d at 293; here, as discussed below, there is an issue of material fact as to Defendant's intentions.  Accordingly, Defendant is not entitled to summary judgment on the basis that this incident was "random and isolated."

> **2.    Defendant is not entitled to qualified immunity, as argued.**

Defendant argues that she is entitled to qualified immunity, because "a rational trier of fact would not conclude that she committed a clearly established constitutional violation against the Plaintiff."  (ECF No. 26, PageID.156.)  As the Supreme Court has stated, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982).  "A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all."  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).  "To determine whether qualified immunity applies, this court applies a two-part test and asks:  (1) whether the officer violated a constitutional right, and (2) whether that constitutional right was clearly established such that 'a reasonable official would understand that what he is doing violates that right.'"  *Moody v. Michigan Gaming Control Bd.*, 871 F.3d 420, 425 (6th Cir. 2017) (quoting *Saucier v. Katz*, 533 U.S. 194, 201-202 (2001)).  "Because the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decision making that will best facilitate the fair and efficient disposition of each case."  *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

### a.  Overstatement

Defendant is not entitled to qualified immunity, as argued.  First, Defendant unfairly characterizes Plaintiff's claims as asserting "a right to unfettered access to mail while in prison."  (ECF No. 26, PageID.158-159.)  This is an over-statement. Even if Plaintiff's pleading does not expressly cite MDOC PD 05.03.118 or MDOC PD 04.05.120, Plaintiff alleges that "[p]olicy entails that prisoners on

temp. seg. must be allowed legal work along with other personal items (not everything)[.]  [L]egal mail is an allowed item."  (ECF No. 1, ¶ 8.)  Thus, Plaintiff's pleading acknowledges that "not everything" is allowed.

### b.   Compliance with MDOC PDs

Second, Defendant argues that she "acted in accordance with the governing MDOC Policy[;]" thus, her "actions are per se reasonable and not a violation [of] any of Peterson's clearly established constitutional rights."  (ECF No. 26, PageID.158-159.)  Defendant's argument that she complied with MDOC Policy seems to be a reference to MDOC PD 05.03.118 ("Prisoner Mail") and its provisions for "processing mail requiring special handling."  MDOC PD 05.03.118 ¶¶ II-KK (ECF No. 26-4, PageID.181).  As noted above, what is in debate is whether Plaintiff's mail was "opened and inspected . . . in the prisoner's presence[,]" and whether "the prisoner [chose] not to sign or accept the mail[.]" (*Id*., ¶¶ JJ, KK.)  However, even *assuming Plaintiff refused to sign or accept*, it is questionable whether Defendant complied with the provision that, "[i]f the prisoner chooses not to sign or accept the mail, that shall be documented and the mail delivered to the prisoner."  *Id*., ¶ KK (ECF No. 26-4, pageID.181).  Plaintiff's verified pleading alleges he "never received that piece of legal mail."  (ECF No. 1, ¶ 12.)  And, Hilligoss declares she "returned the mail to the control center."  (ECF No. 26-2, PageID.165-166 ¶¶ 15, 16.)  She does not purport to have delivered it to

the prisoner or certify compliance with ¶ KK, as one might expect.  Indeed, she is

"unaware of its ultimate disposition." (*Id.*, ¶ 16.)

Moreover, there is another relevant MDOC Policy Directive – MDOC PD

04.05.120 ("Segregation Standards").  Defendant's "understanding" at the time in

question – *i.e.*, that prisoners in Housing Unit 7 Segregation "did not retain legal

mail in their cells[,]" (ECF No. 26-2, PageID.164 ¶ 6; *see also id.*, ¶ 9) – seems

contrary to MDOC PD 04.05.120, which provides that "a prisoner in segregation

shall be provided with or allowed to possess . . . [m]ail privileges in accordance

with PD 05.03.118 'Prisoner Mail,' including the receipt of personal

correspondence and photographs."  MDOC 04.05.120 ¶ AA(12).  In Plaintiff's

words, Hilligoss "brought opened but refused to give [him] his incoming legal mail

based upon her *false* belief that he couldn't have it inside of the cell."  (ECF No.

34, PageID.199 (emphasis added).)  In sum, there are questions of fact as to

whether Defendant "acted in accordance with the governing MDOC [Policies][.]"

(ECF No. 26, PageID.158.)

### c.    Reasonableness & intent

Finally, the question of fact about Defendant's compliance with MDOC PDs

weakens Defendant's argument that her actions were "per se reasonable . . . ."

(*Id.*)  In his motion response, apparently referring to Hilligoss's admission that she

"knew policy directives[,]" (ECF No. 34, PageID.216 ¶ 6), Plaintiff contends

Hilligoss "intentionally took his mail" and "has no valid / lawful justification for telling [him] that he couldn't have his legal mail."  (ECF No. 34, PageID.200.) (*See also* ECF No. 34, PageID.201 ¶ 11 ("Defendant admitted that she knew policy, thus meaning she knew I could have my legal mail.").)  Perhaps Defendant simply was mistaken about segregation prisoners' ability to keep legal mail (*see* ECF No. 26-2, PageID.164 ¶ 6), or perhaps, in light of her alleged foul language when interacting with Plaintiff (*see* ECF No. 1 ¶ 9; ECF No. 34, PageID.201 ¶ 8; *id.*, PageID.221 ¶ 5), Defendant knew but intentionally chose to ignore or remain willfully ignorant about segregation prisoners' mail possession.  Thus, there is a disputed question of material fact as to the reasonableness of Defendant's actions, *i.e.*, whether her actions intentional or unintentional.  The Court may not simply accept Defendant's version of the facts as true; but, even if it did, Defendant's version is repeatedly evolving and inconsistent.  Accordingly, Defendant's actions should not be deemed "per se reasonable and not a violation [of] any of Peterson's clearly established constitutional rights."  (*Id.*, PageID.158-159.)

## F.    Conclusion

As Plaintiff correctly notes, "[c]redibility determinations . . . are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  (ECF No. 34, PageID.200.) Accordingly, as detailed in the foregoing discussion, it is **RECOMMENDED** that the Court **DENY** Defendant Hilligoss's motion for summary judgment (ECF No. 26).  If the Court agrees with this recommendation, then, as to Plaintiff's state law claims (ECF No. 1, ¶ 14), the Court should exercise supplemental jurisdiction, consistent with 28 U.S.C. § 1367.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must precisely recite the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 16, 2024            s/*Anthony P. Patti*
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE